## RAYBESTOS-MANHATTAN, INC. *v.* UNITED STATES.

No. 20.   Argued October 22, 1935.—Decided November 11, 1935.

· *Mr. Charles H. LeFevre,* with whom *Mr. Howard S. LeRoy* was on the brief, for petitioner.

*Mr. A. F. Prescott,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Mr. James W. Morris* were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

In this case we granted certiorari to review a judgment of the Court of Claims, to settle a doubtful point of federal law, of importance in the administration of the

revenue acts, and to resolve a conflict of the decision below with that of the Court of Appeals for the Third Circuit in *MacLaughlin* v. *Westmoreland Coal Co.,* 73 F. (2d) 1004, affirming 8 F. Supp. 963, on opinion below.

The question presented is whether the issue by petitioner of its shares of stock to the stockholders of two other corporations in exchange for the assets of those corporations, pursuant to a plan for their consolidation, involved a " transfer " taxed by § 800 (A) (3) of the Revenue Act of 1926. 44 Stat. 9, 99, 101. The Court of Claims held that it did, and denied recovery of the tax, which petitioner had paid under protest. 80 Ct. Cls. 809; 10 F. Supp. 130.

Section 800, Schedule (A) (2) of the 1926 Act imposes a stamp tax at a specified rate on the original issue of shares of corporate stock. By § 800 (A) (3) a like tax is laid " On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or . . . of interest in property . . . in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation . . . or by any paper or agreement or memorandum or other evidence of transfer or sale . . ." Section 800 imposes liability for the tax upon the transferor, the transferee and the corporation whose stock is transferred.

Petitioner was organized under the laws of New Jersey as a step in carrying out a plan and agreement for the consolidation of three other corporations. Two of the corporations conveyed their property to petitioner in return for a specified number of its shares of capital stock, issued not to the two corporations, but directly to their stockholders in proportion to their holdings. The Government and the taxpayer are not in accord as to the precise interpretation to be placed upon the contracts which resulted in the consolidation, but accepting the

62

taxpayer's contention for purposes of decision, we assume that it was agreed by all concerned that the shares of petitioner were to be issued directly to the stockholders of the two corporations without further intervention by the latter.

Liability for the tax levied on the original issue of stock is conceded, but it is denied that the transaction involved any taxable transfer within the purview of Schedule (A) (3). It is said that the petitioner was subject to the tax imposed by this schedule only if there was a transfer of the right to receive the stock to be issued by petitioner for the assets of the two corporations; that as neither of them was entitled, under the agreement, to receive the certificates for the newly issued shares, which were to be issued directly to their stockholders, neither corporation can be said to have transferred rights to receive stock. We think the statute is not to be read so narrowly.

The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. See *Provost* v. *United States,* 269 U. S. 443, 458, 459. While the statute speaks of transfers, it does not require that the transfer shall be directly from the hand of the transferor to that of the transferee. It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another. Even the ownership of a share of stock, transfer of which is admittedly taxed, is not transferred directly from one to another as is title to a chattel or to real estate. Transfer of title to the shares is effected by a form of novation by which the right of the shareholder is surrendered to the corporation in return for its recognition of a new shareholder designated by the transferor

and the issue to him of a new certificate of stock. It is relinquishment of the ownership for the benefit of another, and the resultant acquisition of it by him which calls the statute into operation.

The subject of the tax is not alone the transfer of ownership in shares of stock. It embraces transfers of rights to subscribe for or receive shares or certificates, whether made upon the books of the corporation " or by any paper, agreement, or memorandum or other evidence of transfer . . ." In the present case the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated. The new shares could not lawfully be issued to any other than the grantor corporation without its authority, and that authority could not be exercised for the benefit of third persons other than its own assenting stockholders. The consolidation agreement thus imposed the duty on petitioner to issue the new shares upon receipt of the property, and at the same time made disposition to the stockholders of the two corporations of the correlative right to receive the stock.

We think that this effective disposition of the right to receive the stock involved a taxable transfer quite as much as if the several legal relationships of the parties had been established at different times and by separate documents. It is not doubted that there would have been a taxable transfer if each corporation had conveyed its property to petitioner in exchange for its shares of stock to be issued as the grantor might direct, and had later ordered the certificates to be issued to its stockholders. The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements. But we do not discern even a technical difference of any significance between such a transaction and that now before us, where the same duty to issue the stock is created

64

and the same shift of the beneficiaries of it is effected simultaneously in a single document. No convincing reason is suggested why the Act should be thought to tax the one and not the other.

The statute is thus not restricted in its application to rights to demand delivery of the stock such as the agreement vested in the stockholders of the two corporations. It embraces the more general one, inseparable from the transaction by which the obligation to issue the stock was created and which inhered in the two corporations by operation of law. Income is not any the less taxable income of the taxpayer because by his command it is paid directly to another in performance of the taxpayer's obligation to that other. See *Douglas* v. *Willcuts,* decided this day, *ante,* p. 1; *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716; *United States* v. *Boston & Maine R. R.,* 279 U. S. 732. Here the power to command the disposition of the shares included the right to receive them and the exercise of the power which transferred the right is subject to the tax.

*Affirmed.*