**TRANSAMERICA CORPORATION v. LEWIS, Former Collector of Internal Revenue.**

**No. 9819.**

Circuit Court of Appeals, Ninth Circuit.

March 12, 1942.

Claude I. Parker, Bayley Kohlmeier, and Harriet Geary, all of Los Angeles, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, S. Dee Hanson, and Joseph Jones, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther P. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The question before the court on this appeal is whether the Documentary Stamp Tax imposed upon the transfer of corporate stocks by Title VIII, Section 800, Schedule A-3 of the Revenue Act of 1926, as amended, 44 Stat. 9, 99, 101; 47 Stat. 169, 273; 48 Stat. 206, § 212; 49 Stat. 431; 49 Stat. 2029; 50 Stat. 358, 26 U.S. C.A. Int.Rev.Acts, page 289, should be computed on the basis of the par or face value of the certificates surrendered to the transfer agent by the transferor, or upon the basis of the par or face value of the new certificates issued to the transferee.

The facts are not disputed. July 2, 1937, Transamerica Corporation, taxpayer-appellant, declared a dividend to its stockholders of stock of Bank of America National Trust and Savings Association, a national banking association, on the basis of one share of the capital stock of the Bank of

America, N. T. & S. A., of the par value of $12.50 a share, for each ten shares of no-par stock of Transamerica Corporation outstanding, as of the close of business July 15, 1937. The resolution and payment of the dividend were approved by the stockholders of appellant on July 10, 1937, and prior to July 31, 1937, the appellant delivered to the transfer agent of the Bank of America National Trust and Savings Association thirty-eight certificates representing 3,986,184 shares of stock of said Bank of America. On or about July 31, 1937, pursuant to the resolution and under the instructions of appellant, the said transfer agent issued and delivered to the stockholders of appellant certificates representing 2,237,962 shares of stock of said Bank of America National Trust and Savings Association.

On January 4, 1937, the appellant had declared a similar dividend to its stockholders of record as of January 15, 1937, the dividend to be paid in the capital stock of Bancamerica-Blair Corporation at the rate of 1/50 share of the latter stock, of the par value of $1, for each share, issued and outstanding, of the capital stock of Transamerica Corporation. Prior to January 30, 1937, the appellant delivered three certificates of stock in Bancamerica-Blair Corporation representing 461,836 shares of stock, with instructions to the latter's transfer agent to issue new certificates to the stockholders of appellant as provided in its dividend resolution of January 4, 1937. On or about January 30, 1937, stock certificates representing 403,756 shares of stock of Bancamerica-Blair Corporation were issued and delivered to the stockholders of appellant.

The taxpayer brought suit to recover the amount of the tax allegedly illegally assessed and collected under protest; judgment was in favor of the defendant; and this appeal followed. Both appellant and appellee have agreed on the calculated amount of tax to be applied to each transaction as a result of the respective declarations of dividend, whether the determination is that the computation shall be on the certificates surrendered by the transferor or upon those issued or delivered to the transferees. We are not concerned, therefore, with the arithmetical amount of tax, but solely with the question stated in our opening paragraph. The appellant suggests that "This is a case of first impression and the issue involved is not specifically covered by either the law or the regulations and research has failed to disclose any reported decisions in which the issue has been considered by the courts." After consideration of the authorities addressed to our attention in the briefs, and as a result of considerable independent research, we acknowledge that we have discovered no case, decision, statute, or regulation, which covers specifically a situation of like posture with the case at hand.

As illustrative of the problem presented and as an example of the effect of the application of the conflicting theories of appellant and appellee in the computation of the tax, we quote the following matter from appellant's brief: "* * * In the case of stock having a par value of $12.50 per share, as did the stock of the Bank of America, the tax on the transfer of eight shares, evidenced by one certificate, would be four cents, whereas the tax on the transfer of eight shares evidenced by eight one share certificates would be thirty-two cents. If a person transferred eight shares represented by one certificate and eight new certificates were issued to the transferee [or transferees] to represent the same stock, the tax on the transfer [or transfers] would be four cents or thirty-two cents, depending upon whether the tax should be computed on the basis of the certificate transferred and surrendered by the transferor or upon the basis of the new certificates issued to the transferee [or transferees]." The appellant concedes the transactions are taxable, disputing only the method of computing the tax and the amount payable.

In deciding the case in favor of defendant, the court below said: "* * * Each transfer or issue of stock to a transferee constitutes a separate transaction and is taxable as such under the statute. The value or denomination of the certificates surrendered to effect the transfer does not determine the tax, but the denomination of certificates issued to each transferee is the basis therefor." 37 F. Supp. 466, 467. The trial judge was of the opinion that a transfer of stock under the statute contemplates a transferor and a transferee, and it was upon that assumption that he based the statement of opinion above set out. This appears to be a common-sense, logical solution of the question.

The deliveries of the certificates by the appellant to the respective

transfer agents were not in and of themselves transfers; if they were, those deliveries would have been taxable as transfers. The transfer agents were, of course, simply conduits, availed of for cancelling the certificates surrendered and issuing the shares actually transferred on to the respective transferees. Until the shares were either actually or constructively received by the transferees, the transfers were incomplete. See Phelps-Stokes Estates, Inc., v. Nixon, 222 N.Y. 93, 118 N.E. 241, 243; Hollister et al. v. United States, D.C.Wash., 38 F.Supp. 7, 8. If a transferee is a necessary party to the completion of a transfer, then the measure of that which is tranferred must be that which is actually or constructively received by the transferee. It follows, therefore, that the tax must be computed upon the basis of the shares, evidenced by the certificates received by each transferee.

Discussing this statute and the tax imposed thereby, the Supreme Court, in Ray-bestos-Manhattan Co., Inc., v. United States, 296 U.S. 60, 62, 63, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111, had this to say: "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. [Cases cited.] While the statute speaks of transfers it does not require that the transfer shall be directly from the hand of the transferor to that of the transferee. It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another. Even the ownership of a share of stock, transfer of which is admittedly taxed, is not transferred directly from one to another as is title to a chattel or to real estate. Transfer of title to the shares is effected by a form of novation by which the right of the shareholder is surrendered to the corporation in return for its recognition of a new shareholder designated by the transferor and the issue to him of a new certificate of stock. *It is relinquishment of the ownership for the benefit of another, and the resultant acquisition of it by him which calls the statute into operation."* (Emphasis supplied.) The sentence emphasized above is sufficiently broad to provide ample authority for the assessment levied, and lends vigor and force to our conclusions.

The greater part of appellee's brief is devoted to argument and authorities for support of the judgment appealed from upon a different ground than that upon which we rest our decision. The appellee argues that the declarations of dividends by the Transamerica Corporation were transfers of "rights to receive" stock and that, therefore, the tax really attached at the time of the declarations, irrespective of the certificates surrendered by Transamerica Corporation which evidenced its ownership of the shares which it distributed by the declarations of dividend. We have not pursued the theory advanced for two reasons: First, because we did not conceive it necessary to the determination of the issue before us; and, secondly, because, perhaps, the theory may not be applicable to the situation before us. This latter reason may be illustrated by an inspection of the statute and the regulation applicable. The statute provides that the tax shall apply to all sales, deliveries, or transfers of legal title to shares or certificates or *rights to receive* such shares or certificates. The regulation (71, Art. 31) provides that "The tax accrues at time of * * * transfer of the legal title to stock, or to the right * * * to receive such stock, regardless of the time * * * of the delivery of the certificate. * * *" Transamerica Corporation did not own, possess, or transfer *rights to receive* shares of stock; it owned and transferred shares of stock. Subsequently to the declaration of dividend, a stockholder of Transamerica Corporation owned rights to receive shares of stock; if he transferred these rights to receive to another, that transfer would be taxable, and is obviously the type of transfer of *rights to receive* to which the statute and regulation refer. Compare Founders General Corp. v. Hoey, 300 U.S. 268, 274, 57 S.Ct. 457, 81 L.Ed. 639; Ladner v. Pennroad Corp., 3 Cir., 97 F.2d 10, 118 A.L.R. 1289.

Judgment affirmed.