**UNITED STATES v. VORTEX CUP CO.**

**No. 5668.**

Circuit Court of Appeals, Seventh Circuit.

June 30, 1936.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, John MacC. Hudson, and E. F. McMahon, Sp. Assts. to the Atty. Gen., and Michael L. Igoe, U. S. Atty., of Chicago, Ill., for the United States.

Fisher, Boyden, Bell, Boyd & Marshall and David A. Watts, and William G. Blood, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal presents the question of the taxability under section 800 et seq. (title 8), Schedule A (3) of the Revenue Act of 1926,[1] of the transfers of stock which took place during the course of the reorganization of an Illinois corporation under the laws of Delaware. Taxes were duly paid on the issuance of the stock in the new Delaware corporation under the provisions of Schedule A (2) of the statute, and as to those taxes no question arises. In addition, however, the government assessed, and the taxpayer paid, under protest, a

---

[1] "Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock * * * or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share." 44 Stat. 99, 101 (see 26 U.S.C.A. §§ 900 note, 902).

tax on the transfer of the new stock from the new corporation directly to the stockholders of the old corporation on the theory that it was the old corporation which paid all the consideration for the stock in the new corporation, and which was entitled to receive it, and that the transfer directly to its stockholders in effect constituted a transfer of the right to receive the stock from the old corporation to its stockholders.

There is no dispute as to the facts which were stipulated. The taxpayer is a Delaware corporation, hereafter to be referred to as the new corporation. It was organized in 1929 pursuant to a plan of reorganization whereby the Vortex Manufacturing Company, an Illinois corporation, hereafter referred to as the old corporation, was liquidated, and transferred all its assets to it in consideration of the issuance by the new corporation of 75,000 shares of class A stock and 100,000 shares of common stock, all without par value, directly to the stockholders of the old corporation, ratably according to their respective holdings in the old corporation. Upon the completion of the organization of the new corporation, its board of directors duly authorized the distribution of the 175,000 shares of its stock to the stockholders of the old corporation, and at the same time, authorized the issuance of 5,000 shares of common stock for a cash consideration of $5 a share to C. T. C. Securities Company. It is admitted that the tax, as to this 5,000 shares, was wrongly assessed and collected, and that the taxpayer is entitled to judgment as to it. The controversy arises as to the taxability of the transfer of the 175,000 shares directly to the stockholders of the old corporation.

The taxpayer, appellee here, states in its brief that it presented two contentions before the District Court, both of which were controverted by the government: (1) The transaction, because of its method or form, that is the issuance of the stock in the new corporation directly to the stockholders of the old, did not come within the taxing statute. It admits, however, that the case, Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, decided after the decision of the case at bar, is conclusive as to this point. (2) There had not been any real transfer of corporate interest at all, where the only change was a change of state of incorporation. It re-

lies upon the case Shreveport-El Dorado Pipe Line Co. v. McGrawl (C.C.A.) 63 F. (2d) 202, as to this point. The government has made no attempt in its brief to meet this second contention, relying on the Raybestos Case as entitling it to a reversal of the judgment of the District Court.

The Raybestos Case, upon which the government relies, and which the taxpayer seeks to distinguish, involved the consolidation of three corporations, and the issuance of a certain number of shares of the stock of the new corporation directly to the stockholders of two of the old corporations. Appellee argues that the fact that the new corporation was the product of three old corporations, the stockholders of each of which had no interest in the others, is the important factor in the case that, admitting that the form of the transfer directly to the stockholders is unimportant, it is of significance that the stockholders, by means of the transfers became possessed of property in which they had previously had no interest. In the case at bar, on the contrary, it argues that in effect the stockholders were merely exchanging ownership in the old for ownership in the new, and that what they actually owned after the exchange was for all practical purposes the same as what they had owned before it, the only difference being in the state in which their corporation was organized. We think the Raybestos Case is not to be so narrowly construed. While the facts upon which appellee seeks to distinguish the case are true, we think they are not controlling. It is to be noted that the court stated at the outset that it granted certiorari to resolve a conflict between that case and that of MacLaughlin v. Westmoreland Coal Co. (C.C.A.) 73 F.(2d) 1004. The latter case involved facts which appear to be identical with those of the case at bar, namely, the transfer of the assets of a single Pennsylvania corporation to a Delaware corporation in exchange for the distribution of the capital stock of the latter directly to the stockholders of the former. This case was one of a group of similar cases cited by the District Court in support of its conclusion that the transfers were not subject to the tax.

We do not agree with the contention of appellee that no real transfer of corporate interest occurs where the only change is that of the state of incorporation. It was argued in New Colonial Ice

Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 791, 78 L.Ed. 1348, that " 'for all practical purposes the new corporation was the same entity as the old one and therefore the same taxpayer.' " The court there said: "This is not in accord with the view on which the stockholders and creditors proceeded when the new company was brought into being. They deserted the old company and turned to the new one because they regarded it as a distinct corporate entity and therefore free from difficulties attending the old one. * * * We are of the opinion that in law and in fact the two corporations were not identical but distinct." While that case involved the question of whether or not the new corporation might, in its income tax return, deduct losses sustained during the year by the old corporation, we think the rule laid down as to the difference in the identity of the two is equally apposite to the case at bar, and that it can not be said that ownership in the new corporation is so nearly identical with that of the old as to involve absolutely no change in corporate interest. It was held in Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 577, 69 L.Ed. 1079, that an exchange of common stock and seven per cent voting preferred stock of a New Jersey corporation, for common stock and six per cent non-voting preferred stock of a Delaware corporation was not an exchange of the same interest. "A corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new."

It is to be noted that the relative ownership of shares in the old and new corporations is not absolutely identical in that in addition to the shares to the stockholders of the old, there were also issued 5,000 shares to the C. T. C. Securities Company which presumably had no interest in the old. While this did not result in a substantial change in the relative interest of each stockholder, it does tend to contradict the assertion of the taxpayer that the stockholders in the new corporation came out exactly where they started, except that they were after the transfer, stockholders in a Delaware corporation instead of in an Illinois one.

In view of the language used in the Marr and New Colonial Cases, supra, we can not follow the conclusion reached in Shreveport-El Dorado Pipe Line Co. v. McGrawl, supra, relied upon by appellee. The judgment is therefore reversed and the cause remanded for further proceedings in accordance with this opinion.