### PACIFIC REFRIGERATING CO. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 8831.

Circuit Court of Appeals, Ninth Circuit.
Nov. 21, 1938.

Maurice W. Seitz, of Portland, Or., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Earl C. Crouter, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is a petition to review decision of the United States Board of Tax Appeals in which the sole question is the cost basis of depreciable property owned by the petitioner and, consequently, the amount of the annual allowance for depreciation. The property, consisting of real estate with buildings thereon, was conveyed to the petitioner before the taxable year and the question is whether or not the cost to petitioner or to its transferors, who made a profit of $50,000, is to be used as the cost basis for depreciation. The Commissioner, and the Board of Tax Appeals, held that the cost to the transferor should be used as the basis for depreciation for the reason that after the transfer of the property to the petitioning corporation the transferors remained in control of the corporation, owning more than 80 per cent of its stock. Rev.Act of 1932, c. 209, 47 Stat. 169, Secs. 112(b) (5), 114(a), 26 U.S.C.A. §§ 112(b) (5), 114(a).

The question involved is factual, as to which the Board of Tax Appeals has exclusive power of determination, and its decision must stand unless we can say that there is no substantial evidence to support it.

The facts, briefly stated, are that Walter F. Henningsen was president of the Northwestern Ice and Cold Storage Company; that he caused appellant to be formed on April 20, 1929; that prior thereto, on April 13th, he had purchased for $40,000 a piece of land upon which a four-story brick brewing house, suitable for cold storage purposes, had been erected. This purchase was in pursuance of an

option obtained earlier in the year 1929. The sum of $500 paid for the option was applied on the purchase price and no further amount was paid by the buyer. Prior to the end of May 1929 the Northwestern Ice and Cold Storage Company expended $71,661.22 for machinery and improvements installed upon the property. In the meantime plaintiff corporation was organized (April 29, 1929) with a capital stock of $150,000, consisting of 1500 shares of stock of the par value of $100 per share. Walter F. Henningsen subscribed for one thousand shares in his own name for the Northwestern Ice and Cold Storage Company, and his son, Walter F. Henningsen, Jr., subscribed for 250 shares and his nephew, Fred S. Henningsen, for 250 shares.

On July 11, 1929, Walter F. Henningsen assigned all his interest in the above mentioned real property and the machinery and improvements made thereon on behalf of the Storage Company, in consideration for which the petitioner issued 500 shares of stock and assumed the indebtedness of $39,500 due upon the purchase price agreement for the above mentioned land. At the time of the transfer (June 11, 1929) the fair market value of Walter F. Henningsen's contract of purchase was $50,500, and the property itself had a fair market value of $90,000. The $71,661.22 advanced by the Northwestern Ice and Cold Storage Company was treated as payment upon the stock subscription of Walter F. Henningsen made on its behalf.

Later, in June 1929, the Northwestern Ice and Cold Storage Company expended $25,798.73 in improving the property. Because of such expenditures of $71,661.22 and $25,798.73, aggregating $97,469.95, on November 6, 1929, 975 shares of stock in the corporation were issued to it. Petitioner claims that the 500 shares of stock issued on consideration of the transfer to petitioner by Walter F. Henningsen, of the contract for the purchase of the real estate and improvements were issued directly to Walter F. Henningsen, Jr., and to Fred S. Henningsen, each receiving 250 shares, and that their respective subscription liabilities were cancelled. A resolution to that effect was passed by the petitioner. However, Walter F. Henningsen testified: "I issued to them a division of the stock and accepted their notes in payment therefor, the intention being that they should pay me back out of the earnings of the stock, or out of any savings that they might

make in their salaries or otherwise. The deal was with me personally."

This evidence justified the finding of the Board that the ownership of the stock passed through Walter F. Henningsen. Standard Oil Co. of Cal. v. U. S., 9 Cir., 90 F.2d 571.

Affirmed.